UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1631

DANIEL J. MERENSTEIN, M.D.,

Plaintiff - Appellant,

versus

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Chief
District Judge.  (CA-04-139-A)

Argued:  May 26, 2005                    Decided:  July 12, 2005

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Bruce Philip Merenstein, SCHNADER, HARRISON, SEGAL & LEWIS,
Philadelphia, Pennsylvania, for Appellant.  Elizabeth Stanulis
Skilling, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Glen Allen,
Virginia, for Appellee.  **ON BRIEF:** Nancy Winkelman, SCHNADER,
HARRISON, SEGAL & LEWIS, Philadelphia, Pennsylvania, for Appellant.
John M. Claytor, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Glen Allen,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Daniel J. Merenstein, M.D., appeals the district court's dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of his claim for actual fraud against St. Paul Fire & Marine Insurance Company ("St. Paul"). As explained below, Merenstein's Complaint sufficiently alleges the elements of actual fraud under Virginia law, and we therefore reverse and remand.

I.

A.

Merenstein filed his Complaint on February 9, 2004, in the Eastern District of Virginia, pursuant to that court's diversity jurisdiction. See 28 U.S.C. § 1332(a). Merenstein is a physician residing in the District of Columbia, and St. Paul is a Minnesota corporation. Compl. at ¶¶ 2-3.[1] From July 1, 2000, to July 1, 2001, Merenstein was an insured under a professional liability insurance policy issued by St. Paul to his employer, INOVA Health System Foundation. Id. at ¶¶ 4-5. While covered by this policy, Merenstein was sued for medical malpractice in the Circuit Court for the County of Fairfax, Virginia. Id. at ¶ 6.

---

[1]We recite the facts substantially as they are alleged in the Complaint. We are obliged, in our review of the district court's Rule 12(b)(6) dismissal, to accept all well-pleaded facts as true and to view the allegations of the Complaint in the light most favorable to Merenstein. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005).

2

On approximately March 1, 2003, Bill Rigsbee, a St. Paul employee experienced in adjusting medical malpractice claims, requested that Merenstein provide approval to St. Paul for settlement of his exposure in the malpractice action for the sum of $466,666.66. Compl. at ¶¶ 9, 11, 22. At that time, Merenstein asked Rigsbee if the payment of such a settlement "would be likely to have any possible adverse implications on [Merenstein's] ability to obtain liability insurance coverage in the future, or to practice medicine." Id. at ¶ 12. Rigsbee responded "in unequivocal terms that the proposed settlement . . . would have no adverse or negative effect whatsoever on [Merenstein's] future ability to obtain liability insurance coverage." Id. at ¶ 13.

In reliance upon this assurance by Rigsbee, Merenstein approved the proposed settlement. Compl. at ¶ 14. As a result, on approximately March 14, 2003, the malpractice action was dismissed as having been settled by agreement of all parties. Id. at ¶ 8. Thereafter, Merenstein attempted to obtain liability insurance coverage from several different insurance carriers, only to be rejected based upon the malpractice settlement. Id. at ¶ 15.[2] Without liability insurance coverage, Merenstein has been unable to continue his private medical practice. Id. at ¶ 16.

---

[2]The Complaint does not specify whether Merenstein has ever sought such coverage from St. Paul.

In support of his actual fraud claim, Merenstein alleges that Rigsbee's assurance to him constituted an intentional misrepresentation of material fact. Compl. at ¶ 17, 24. Merenstein also maintains that Rigsbee knew that his representation was false because his job involved adjusting medical malpractice claims for St. Paul. Id. at ¶ 22. According to the Complaint, Rigsbee assured Merenstein of the foregoing not only to obtain his approval of the proposed settlement, but also, at least in part, to keep INOVA satisfied with St. Paul's adjusting services. Id. at ¶ 23. As a result of his reliance on Rigsbee's assurance, Merenstein lost the ability to practice medicine in the private sector. Id. at ¶ 25. He therefore seeks compensatory damages from St. Paul for loss of his earning capacity and for his mental anguish, as well as an award of punitive damages.

B.

On March 1, 2004, St. Paul moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. St. Paul contended that the alleged representation made by Rigsbee is not actionable under Virginia law, because (1) it was not of a present, existing fact, but rather was merely his opinion; and (2) it was not one on which Merenstein could have reasonably relied. Addressing only St. Paul's first contention, the court dismissed

4

Merenstein's Complaint by Order of April 15, 2004 (the "Order").

Merenstein has filed a timely notice of appeal, and we possess

jurisdiction under 28 U.S.C. § 1291.[3]


II.

We review de novo a district court's dismissal of a complaint

under Rule 12(b)(6). Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268

(4th Cir. 2005). Such a dismissal is appropriate only if it

appears beyond doubt that the plaintiff can prove no set of facts

that would entitle him to relief. Id. Viewing the plaintiff's

allegations in the light most favorable to him, we must assess

whether the complaint "adequately state[s] a set of facts which, if

proven to be true, would entitle [him] to judicial relief." Id.

(internal quotation marks omitted).


III.

As recognized by the district court, in order to state a claim

for actual fraud under Virginia law, a plaintiff must establish the

following: "(1) a false representation, (2) of a material fact,

(3) made intentionally and knowingly, (4) with intent to mislead,

(5) reliance by the party misled, and (6) resulting damage to the

---

[3]In addition to the claim of actual fraud, the Complaint
asserts a constructive fraud claim. The district court did not
distinguish between those claims in its Order dismissing the
Complaint. The viability of the constructive fraud claim is not
before us on appeal.

party misled." Order at 3 (citing <u>Evaluation Research Corp. v.</u> <u>Alequin</u>, 439 S.E.2d 387, 390 (Va. 1994)).[4] In assessing Merenstein's actual fraud claim, the district court appears to have conflated two general legal principles of Virginia law — first, that neither unfulfilled promises nor statements as to future events can constitute fraud, and second, that opinions also are nonactionable as fraud. Applying these general rules, the court concluded that Rigsbee's assurance did not constitute an adequate predicate for Merenstein's actual fraud claim. Specifically, the district court observed that a claim of fraud

> must relate to a present or pre-existing fact and cannot be predicated on unfulfilled promises or statements as to future events. <u>Patrick v. Summers</u>, 235 Va. 452, 454 (1988). Such promises or statements are merely opinions which are not actionable under Virginia law. <u>See</u> <u>Lambert</u> <u>v. Downtown Garage, Inc.</u>, 262 Va. 707, 717 (2001); <u>See</u> <u>Saxby v. Southern Land Co.</u>, 109 Va. 196, 198 (1909).

> In the case at hand, the alleged representation is a statement about the likelihood of occurrence of a future event, that is, the likelihood that insurance carriers would or would not provide future insurance coverage to the Plaintiff after the settlement. Such a statement can only be characterized as an opinion. As such, Plaintiff has failed to state a claim for actual . . . fraud.

Order at 3.

As explained below, we are unable to agree with the district court for two reasons. First, although the court recognized

---

[4]In this diversity matter, it is undisputed that we apply the substantive law of Virginia. <u>See</u> <u>Seabulk Offshore, Ltd. v. Am.</u> <u>Home Assurance Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004) (citing <u>Erie</u> <u>R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

6

Virginia's general rule that a fraud claim cannot be predicated on unfulfilled promises or statements as to future events, it failed to address an applicable exception (the "exception"): a promise made in the absence of a present intention of performing can constitute fraud. Second, the court improperly characterized Rigsbee's assurance to Merenstein as a nonactionable "opinion" under Virginia law, failing to recognize that it instead could be construed as a litigable affirmation of present fact. We address these issues in turn.

A.

As the district court observed, under the general rule, a fraud claim must be premised on the misrepresentation of a present or pre-existing fact, and it cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Patrick v. Summers, 369 S.E.2d 162, 164 (Va. 1988); Lloyd v. Smith, 142 S.E. 363, 365 (Va. 1928). However, the Supreme Court of Virginia has also recognized the exception: that is, a fraud claim "may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them." Lloyd, 142 S.E. at 365; see also Patrick, 369 S.E.2d at 164. The basis for the exception is that "the state of the promisor's mind at the time he makes the promise

7

is a fact," so that, if he misrepresents his state of mind, "he misrepresents a then existing fact."  Lloyd, 142 S.E. at 366.[5]

Merenstein's actual fraud claim, as spelled out in the Complaint, is readily analogous to those underlying the fraud claims in Boykin v. Hermitage Realty, 360 S.E.2d 177 (Va. 1987), where the Supreme Court of Virginia applied the exception.  The Boykin plaintiffs (four married couples) purchased condominiums, and the defendants (Hermitage Realty and its representative) served as the exclusive sales agent of the condominium developer.  360 S.E.2d at 177-78.  The agent had assured the plaintiffs, prior to their purchases, that a wooded area behind the condominiums would not be developed in the future.  Id. at 178.  At the time of these representations, however, the agent was aware that the wooded area was a proposed playground site.  Id.  The plaintiffs, unaware of any such plans and relying upon the agent's assurances, purchased the condominiums; several months later, the developer constructed the planned playground.  Id.  In upholding the verdict for the

---

[5]The Supreme Court of Virginia has consistently upheld fraud claims predicated on promises made without the present intent to perform.  See Elliott v. Shore Stop, Inc., 384 S.E.2d 752, 756 (Va. 1989); Colonial Ford Truck Sales, Inc. v. Schneider, 325 S.E.2d 91, 94 (Va. 1985); Sea-Land Serv., Inc. v. O'Neal, 297 S.E.2d 647, 651-52 (Va. 1982); see also Flip Mortgage Corp. v. McElhone, 841 F.2d 531, 537 (4th Cir. 1988) (allowing fraud claim, under Virginia law, based on breach of contract where evidence was sufficient to establish that defendant never intended to perform); cf. Patrick, 369 S.E.2d at 164 (denying fraud claim absent sufficient proof that defendant had intent to defraud at time he promised to purchase plaintiff's property).

plaintiffs on their fraud claims, the Supreme Court of Virginia observed that the agent's assurances — regarding the future conduct of the third-party developer — "were promises of privacy made in reply to express inquiries." Id. at 179. The court also concluded that these assurances constituted "deliberate misrepresentations of existing facts, all made to induce the several plaintiffs to pay a premium price for property they otherwise would not have bought." Id.

In this matter, analogously, the Complaint alleges that Rigsbee gave an unequivocal assurance respecting Merenstein's future insurability to induce him to agree to the malpractice settlement — something he otherwise would not have done. As in Boykin, Rigsbee's assurance related to the prospective conduct of third parties (i.e., other insurers). And, according to the Complaint, Rigsbee knew that his representation was false at the time of its making. Therefore, under Boykin, Rigsbee's assurance — construed as a promise made with present fraudulent intent — constitutes a sufficient predicate for Merenstein's actual fraud claim.[6]

---

[6]St. Paul seeks to distinguish the Boykin decision, contending that the agent's assurances were attributable to the condominium developer and, thus, did not regard the future conduct of a "third party." This contention, however, finds no support in Boykin, in which "[t]he plaintiffs nonsuited their claims against" the developer. 360 S.E.2d at 178 n.*.

B.

In dismissing the Complaint, the district court also relied on Saxby v. Southern Land Co., where the Supreme Court of Virginia ruled that "[t]he mere expression of an opinion, however strong and positive the language may be, is no fraud." 63 S.E. 423, 424 (Va. 1909). Significantly, however, the district court failed to fully assess the Saxby court's definition of "opinions" in this context, i.e., "[s]tatements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated." Id. The court explained that such opinions cannot serve as predicates for fraud claims, because "a man is not justified in placing reliance upon them." Id.[7]

In this proceeding, by contrast, the evidence may show that Rigsbee was aware that Merenstein would be unable to obtain liability insurance after the malpractice settlement, despite Rigsbee's assurance to the contrary. In this context, Rigsbee's

---

[7]The Saxby plaintiff-buyers had predicated their fraud claims, arising from the sale of a farm, on the defendant-seller's misestimation of the property's acreage and misstatements of the value and volume of timber and potatoes that the land would yield. 63 S.E. at 424. The court characterized the acreage estimation as merely a "manifest" expression of "opinion from appearances," and the statements as to the timber and potatoes as "mere trade talk . . . with respect to matters of an essentially uncertain nature." Id. Similarly, in Lambert v. Downtown Garage, Inc., another decision relied on by the district court, the court observed that the statement that a wrecked car was now in "excellent" condition, without more, was "clearly a matter of opinion in the manner of puffing," and thus nonactionable as fraud. 553 S.E.2d 714, 717 (Va. 2001).

10

assurance should not be construed as a mere opinion, but rather an affirmation of a present fact: insured physicians who agree to settle medical malpractice claims do not encounter difficulty in thereafter obtaining liability coverage. Cf. Horner v. Ahern, 153 S.E.2d 216, 220 (Va. 1967) (concluding that, even if seller's assurance of "no termite damage" was "expression of opinion," it could amount to affirmation of fact sufficient to support fraud claim, where seller knew of facts incongruous with opinion).

Significantly, there is no "bright line test" in Virginia "to ascertain whether false representations constitute matters of opinion or statements of fact." Mortarino v. Consultant Eng'g Servs., Inc., 467 S.E.2d 778, 781 (Va. 1996). Instead, "each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." Id. (internal quotation marks omitted). This principle is particularly significant in the posture of this appeal, where the underlying Complaint was dismissed under Rule 12(b)(6), prior to any discovery being conducted. While Merenstein may face an uphill climb in proving his case, his Complaint is sufficient to state a claim of actual fraud.[8]

---

[8]In rendering this decision, we also reject St. Paul's alternative ground for affirming the district court, i.e., that Rigsbee's assurance was not one on which Merenstein could have

11

IV.

Pursuant to the foregoing, we reverse the dismissal of Merenstein's actual fraud claim and remand for such other and further proceedings as may be appropriate.

<u>REVERSED AND REMANDED</u>

---

reasonably relied.  St. Paul urges us to accept as true several "self-evident" facts that are not pleaded in the Complaint, such as that "a claims adjustor for one company would not have knowledge of the underwriting standards and application guidelines of other companies."  Appellee's Br. at 11.  The "reasonable reliance" issue — like the closely related question of whether Rigsbee's assurance constituted an unfulfilled promise, statement as to future events, opinion, or affirmation of present fact — warrants discovery and is not properly resolved on a Rule 12(b)(6) motion.